John D. Fiero (admitted *pro hac vice*)
Jason H. Rosell (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Tel: (415) 263-7000
E-mail: jfiero@pszjlaw.com
jrosell@pszjlaw.com

Matthew C. Zirzow (NV Bar No. 7222)
Zachariah Larson (NV Bar No. 7787)
LARSON & ZIRZOW LLC
850 E. Bonneville Ave.
Las Vegas, NV 89101
Tel: (702) 382-1170
Email: mzirzow@lzlawnv.com
zlarson@lzlawnv.com

*Counsel to the Official Committee of Unsecured Creditors*



**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>MP REORGANIZATION,<br><br>Debtor. | Case No. 22-14422-NMC<br><br>Chapter 11 |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS ON BEHALF OF MP REORGANIZATION,<br><br>Plaintiff,<br><br>v.<br><br>RYAN DREXLER, MICHAEL HELLER, PAUL KARR, AND CONSAC, LLC<br><br>Defendants. | Adv. Pro. No. 24-_____-NMC |

**COMPLAINT (I) TO AVOID AND RECOVER PREFERENTIAL TRANSFERS; (II) FOR DAMAGES FOR BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES, (III) FOR DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502, AND (IV) TO EQUITABLY SUBORDINATE CLAIMS PURSUANT TO 11 U.S.C. § 510(C)(1)**

The Official Committee of Unsecured Creditors (the "**Committee**") duly-appointed in the chapter 11 case of the above-captioned debtor and debtor in possession (the "**Debtor**" or the "**Company**"), as and for its complaint (the "**Complaint**") brought on behalf of the estate of MP

Reorganization and against the above-captioned defendants, Ryan Drexler ("**Drexler**"), Michael Heller ("**Heller**"), Paul Karr ("**Karr**") (each a "**Director**" and sometimes collectively as the "**Directors**" or the "**Board**" or the "**Board Defendants**"), and Consac, LLC ("**Consac**" and together with the Board Defendants, the "**Defendants**"), by its undersigned counsel, alleges as follows upon information and belief:

## I.

## INTRODUCTION

1. By this action, the Committee – standing in the shoes of the Debtor's bankruptcy estate by both stipulation and Bankruptcy Court order – seeks to recover approximately $6.3 million in preferential transfers paid to Drexler and facilitated by the Board through its neglect and malfeasance. Additionally, the Committee seeks to hold each Board member accountable for his or her malfeasance and neglect in failing to check the dangerous impulses of Drexler, as more particularly described below.

2. Prior to the sale of substantially all of its assets in October 2023, the Debtor was a performance lifestyle company that developed, marketed, and distributed worldwide a range of branded sports nutrition products. The Company was formed in 2008 by Cory Gregory and Bradley Pyatt. Although the Debtor was once successful, with annual revenues in excess of $85 million, since at least 2018, and due in material part to the facts and circumstances outlined below, the Debtor's business significantly deteriorated leading to the resignation of most of its top executives. During the same period, the Debtor's certified public accountants – including Plante Moran, Moss Adams, and SingerLewak – passed through a revolving door of departures as the Company's accounting discrepancies were uncovered.

3. On its schedules of assets and liabilities in the bankruptcy case [Docket No. 176], the Debtor listed total unsecured prepetition claims arising from the operation of its business of approximately $21 million (exclusive of insider debt), and additional claims have been asserted by creditors who filed proofs of claim with the Bankruptcy Court since the Petition Date. As a result of the mismanagement of the Debtor's business under the direction of the Board, the value of the Debtor's business was damaged as it incurred millions of dollars of obligations to vendors, employees, and



Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
San Francisco, California

others with little means of satisfying those claims. Indeed, the Debtor's descent into bankruptcy was preceded by years of mismanagement, insider dealings, lack of accounting controls, mounting losses, neglect, and dereliction of duty by the Debtor's directors and officers.

4. The Committee commences this action to seek redress for the harm inflicted on the Debtor and its unsecured creditors by Drexler and the other Directors. By this Complaint, the Committee seeks (i) to avoid and recover from Drexler as preferential transfers under 11 U.S.C. Section 547 the amount of at least $6,358,350, (ii) recover from each Board member damages for the breaches of fiduciary duty alleged and described below and (iii) to equitably subordinate any claims asserted by or on behalf of any Defendant in the Debtor's chapter 11 case to all other allowed claims of unsecured creditors. These claims are a critical source of recovery for the Plaintiff's estate and the general unsecured claims in this chapter 11 case.

## II.

## JURISDICTION AND VENUE

5. On December 15, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**"). The Debtor operates its business and manages its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No examiner has been appointed in the Debtor's above-captioned chapter 11 case (the "**Bankruptcy Case**").

6. On January 4, 2023, the United States Trustee filed an *Appointment of Official Committee of Unsecured Creditors* [Docket No. 49] (as amended). Under the *Stipulation Granting the Official Committee of Unsecured Creditors Standing to Pursue Certain Estate Causes of Action* [Docket Number 349], the Debtor conveyed to the Committee exclusive standing to prosecute, mediate, and/or settle all claims and causes of action related Drexler on behalf of the Debtor's estate (i) that are property of the Debtor's estate under section 541 of the Bankruptcy Code, (ii) that arise under sections 544, 546, 547, 548, 549, and 550 of the Bankruptcy Code, or (iii) that arise under section 510(b) of the Bankruptcy Code. Additionally, in the *Stipulation Granting the Official Committee of Unsecured Creditors Standing to Pursue Certain Estate Causes of Action* [Docket No.



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

628] the Debtor conveyed to the Committee exclusive standing to prosecute, mediate, and/or settle any and all claims, causes of action, objections, and other rights on behalf of the Debtor's estate with respect to director and officer liability claims. Accordingly, the Committee has authority to file this Complaint and thereafter prosecute this proceeding.

7. On August 22, 2024, the Bankruptcy Court entered its *Order Approving Appointment of Chapter 11 Trustee* [Docket No. 1123] pursuant to which the Bankruptcy Court appointed Nathan F. Smith (the "**Chapter 11 Trustee**") as the chapter 11 trustee in the Bankruptcy Case.[1]

8. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) that arises out of and relates to the Bankruptcy Case.

9. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and Local Rule 1001(b)(1).

10. Plaintiff confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Bankruptcy Court in connection with this Complaint to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11. Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

## III.

## PARTIES

12. Plaintiff is the Debtor in the Bankruptcy Case, a corporation organized under the laws of the State of Nevada and having its principal place of business in Clark County in the State of Nevada.

13. Defendant Drexler is an individual residing in Nevada. At all relevant times, from at least January 1, 2019 through December 12, 2022, Defendant Drexler was chair of the Board of Directors of the Debtor (the "**Board**") and Chief Executive Officer of the Debtor.

14. Defendant Heller is an individual residing in London, England. At all relevant times, from at least January 19, 2021 through the Petition Date, Defendant Heller was a member of the Board

[1] The Chapter 11 Trustee has thus far declined to accept standing to prosecute the estate's claims against the Defendants.



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

and served on the Board's Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee.

15. Defendant Karr is an individual residing in South Carolina. At all relevant times, from at least June 1, 2021 through the Petition Date, Defendant Karr was a member of the Board and served as chair of the Board's Audit Committee and as a member of the Board's Compensation Committee and Nominating and Corporate Governance Committee.

16. Defendant Consac is a Delaware limited liability company. Upon information and belief, Ryan Drexler is the sole member, managing member, and Chief Executive Officer of Defendant Consac.

## IV.

## GENERAL ALLEGATIONS

17. The Debtor's descent into bankruptcy was preceded by years of mismanagement, insider dealings, lack of accounting controls, mounting losses, and dereliction of duty by the Debtor's directors and officers, as described more fully below.

### A. Lack of Corporate Formalities

18. As the Debtor's financial position began to unravel in May 2022 (*i.e.*, as its senior secured debt became due and its relationship with the senior lender soured), the Debtor stopped maintaining corporate minutes. Indeed, despite a diligent search by the Committee, it appears there are no Board minutes for any meeting that took place between May 12, 2022 and December 12, 2022. This failure to adequately maintain corporate records is *prima facie* evidence of the fact that the Board acted without regard for its fiduciary duty of care to the Debtor.

### B. Turnover of Chief Financial Officers

19. During Drexler's tenure as Chief Executive Officer of the Debtor, the Debtor's Chief Financial Officers resigned at an alarming rate, especially in the two years preceding the Petition Date.

| Chief Financial Officer | Appointment | Resignation |
|---|---|---|
| Allen Sciarillo | 4/20/2020 | Unknown |
| Sabina Rizvi | 4/5/2021 | 7/22/2022 |
| Eric Chin | 7/28/2022 | 8/17/2022 |
| Gary Shirshac | 9/26/2022 | 7/10/2023 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**C. <u>The Decision to Litigate Rather Than File for Bankruptcy</u>**

20. Drexler – the Debtor's senior executive – and the Board repeatedly ignored the advice of its professionals and refused to file an orderly and consensual chapter 11 case with the support of its senior lender. Instead, the Board (led by Drexler) pursued a scorched-earth litigation strategy that ultimately forced the Company to cease operations. A brief timeline of the relevant events is outlined below.

21. In spring 2021, Drexler (as CEO) and Rizvi (as CFO) devised a strategy to raise capital from the public markets in the fall of 2021 with the assistance of ROTH Capital Partners, LLC ("**Roth Capital**"). However, on June 4, 2021, the Company's certifying public accountant, SingerLewak LLP, was dismissed by the Audit Committee of the Board. Thereafter, Moss Adams LLP replaced SingerLewak LLP as the Debtor's certifying accountant. As a result of the substitution of certifying accountants, the Company was able to complete the previous year's audit in time to raise capital from the public markets in fall 2021.

22. Before the public capital raise strategy could be accomplished, the Debtor's lack of short-term working capital forced the Company to pivot to a new strategy that sought a private investment from Empery Tax Efficient, LP ("**Empery**"), arranged by Roth Capital. Thereafter, on October 13, 2021, Empery Master Onshore, LLC ("**EMO**"), Empery, Empery Tax Efficient III, LP ("**ETE3**"), and Empery Debt Opportunity Fund, LP ("**EDOF**," and collectively with EMO, Empery, and ETE3, the "**Empery Noteholders**") with ETE as lead investor, and collateral agent for all of the secured noteholders, Ionic Ventures, LLC, Anson Investments Master Fund LP, CVI Investments, Inc., HB Fund LLC, Intracoastal Capital LLC, Bigger Capital Fund, LP, District 2 Capital Fund LP, L1 Capital Global Opportunities Master Fund, and Altium Growth Fund, LP (collectively, the "**October Noteholders**") entered into a Securities Purchase Agreement (the "**Securities Purchase Agreement**") with the Company.

23. Each October Noteholder's securities purchase was evidenced by an Original Issue Discount Senior Secured Note Due April 13, 2022 (collectively, the "**October Notes**") issued to the October Noteholders by the Company. The October Notes were issued with an original issue discount of 14%, accrued no interest and matured in just six months, on April 13, 2022 (subject to extension to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

May 28, 2022 under certain circumstances). The aggregate principal amount of the October Notes was $8,197,674.42, resulting in gross proceeds to the Company of $7,050,000, exclusive of placement agent commissions, fees, and other offering expenses.

24. To secure its obligations under the October Notes and the Securities Purchase Agreement, the Debtor granted the October Noteholders a security interest in substantially all of its assets pursuant to a pledge and security agreement.

25. At the time the Board approved the issuance of the October Notes, the Debtor had no means (or projected ability) to repay the October Notes upon maturity. Instead, the Company issued such debt with the slimmest of hopes that the October Noteholders would voluntarily agree to convert their debt to equity upon maturity (all the while recognizing that the October Noteholders were under no obligation to do so) or somehow refinance the October Notes.

26. Later, on June 3, 2022, the Company entered into an Amended and Restated Securities Purchase Agreement (the "**Amended and Restated Securities Purchase Agreement**") with certain investors, including certain of the October Noteholders, which amended and restated the Securities Purchase Agreement to, among other things, allow for the issuance of additional senior secured notes and warrants so that the Debtor could borrow even more money as it continued to fail. Thereafter, on June 10, 2022, the Debtor issued new Original Issue Discount Senior Secured Note Due December 10, 2022 (the "**June Notes**" and collectively with the October Notes, the "**Notes**") to Empery Noteholders, Ionic Ventures, LLC, Anson Investments Master Fund LP, HB Fund LLC, Bigger Capital Fund, LP, District 2 Capital Fund LP, Altium Growth Fund, LP, Walleye Opportunities Master Fund Ltd., and Roth Capital Partners, LLC (collectively, the "**June Noteholders**" and together with the October Noteholders, the "**Secured Noteholders**") for an aggregate principal amount of $3,081,875, resulting in gross proceeds to the Company of $2,465,500, exclusive of placement agent commission, and fees and other offering expenses. The maturity date of the June Notes was December 10, 2022.

27. In connection with the issuance of the June Notes, the maturity date of the October Notes was extended to December 10, 2022 and the original issue discount on the October Notes was doubled – from 14% to 28%. As with the October Notes, at the time of the issuance of the June Notes,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the Debtor had no means (or projected ability) to repay them upon maturity. Instead, the Debtor issued the debt with the false hope that the Secured Noteholders would voluntarily agree to (a) convert their debt to equity upon maturity (even though the Secured Noteholders were under no obligation whatsoever to do so and the declining fortunes of the Company suggested this was unlikely) or (b) refinance the Notes.

28. Shortly after issuance of the October Notes, the Company's relationship with Empery soured and became hostile due to the Company's poor performance and Empery learning after the fact about a host of bad deals, numerous pending lawsuits (which were not disclosed), and a variety of employee disputes.

29. On August 22, 2022, the Board finally came to the conclusion that the Debtor's financial statements set forth in its Annual Report on Form 10-K for the year-ended December 31, 2021 and its Quarterly Report on Form 10-Q for the quarter ended March 31, 2022 could no longer be relied upon due to errors in such financial statements, and that a restatement of such financial statements was required.

30. On August 26, 2022, the Company received a letter (the "**August Letter**") from Empery, as collateral agent under the Notes (the "**Collateral Agent**"), pursuant to which Collateral Agent advised the Company of its position that such public disclosure about the non-reliance on, and restatement of the financial statements demonstrated a breach of certain representations under Section 3.1(h) of the Amended and Restated Securities Purchase Agreement.

31. In the August Letter, Collateral Agent advised further that an event of default under the Notes included a breach of the representations under the Amended and Restated Securities Purchase Agreement.

32. On September 8, 2022, the Company received a separate letter (the "**September Letter**") from the Collateral Agent pursuant to which the Collateral Agent advised the Company of its position that an event of default under the Notes included the fact that Sabina Rizvi was no longer serving as the Company's Chief Financial Officer or as a member of the Board, unless Ms. Rizvi had resigned without Good Reason (as defined in the Notes) and the Company replaced Ms. Rizvi with another Chief Financial Officer and member of the Board acceptable to the Collateral Agent within

45 days. The September Letter advised further that such 45-day period had already expired and that Ms. Rizvi had not been replaced with another Chief Financial Officer and member of the Board acceptable to the Collateral Agent.

33. Based on the foregoing and the Committee's own due diligence, Plaintiff is informed and believes that, subsequent to the receipt of the September Letter, the Board thereafter took a "hands off" approach and simply deferred to Mr. Drexler on all key decisions leading up to the Company's ultimate demise in December 2022. In other words, the other members of the Board ceased to function as a proper board with independence and instead simply became a rubber stamp for Drexler's reckless (and ultimately ruinous) decisions based upon his own self-interest.

34. For example, despite understanding the tension and distrust that existed between CEO Drexler and Mr. Lane of Empery, the Board still allowed Mr. Drexler to lead the workout negotiations on behalf of the Company.

35. In late October 2022, the Company engaged Marc Ross of HBM Management Associates, LLC as Chief Restructuring Officer at the insistence of Prestige Capital, the Company's factor. At the same time, the Company engaged sophisticated restructuring counsel, Fox Rothschild LLP.

36. In late November 2022, both Mr. Ross and counsel at Fox Rothschild LLP strenuously recommended to the Board that the Company file a voluntary petition for relief under chapter 11 of the Bankruptcy Code. In addition, the Committee has discovered that, during this same time period, Empery also encouraged the Company to file for bankruptcy on a consensual basis. Drexler was unwilling to do so, and the Board did nothing to overrule him. Indeed, against the advice of its qualified and experienced professionals, the Board (following the lead of CEO Drexler) rejected the idea of a voluntary bankruptcy filing – despite there not being any plausible path to satisfying the Company's obligations under the Notes prior to their impending maturity on December 10, 2022.

37. Instead, in what Plaintiff is informed and believes was a complete abandonment of the Board Defendants' fiduciary duties to creditors, the Board pursued an extremely speculative and reckless strategy that amounted to nothing more than following Drexler's suggestion that the Company align itself with another litigious party, White Winston Select Asset Funds, LLC ("**White Winston**"),

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
San Francisco, California

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

in the hopes of negotiating better terms going forward with Empery. As a result of the Board's refusal to act in the best interests of the Company and its creditors, Marc Ross (the Company's *de facto* Chief Restructuring Officer) and Fox Rothschild (the Company's legal counsel with significant insolvency expertise) both resigned.

**D. <u>Secured Notes Default and White Winston Settlement</u>**

38. On November 17, 2022, Empery provided an Additional Events of Default Notice to the Company pertaining to various unauthorized financings and cash transfers to Ryan Drexler (presumably approved by the Board), which were all in violation of the Notes.

39. On November 30, 2022, after Marc Ross informed Empery that the Debtor was insolvent and the Board had adamantly refused to consider a voluntary bankruptcy filing, Empery began a public notice campaign for a foreclosure sale of substantially all of the Company's assets pursuant to Article 9 of the Uniform Commercial Code on December 15, 2022 at 1:00 p.m. (Pacific Time) (the "**Foreclosure Sale**") – 5 days after the stated maturity date of the Notes.

40. Fully aware of the scheduled Foreclosure Sale and the upcoming undisputed maturity date of the Notes, the Board made the reckless decision – against the advice of its professionals – to join forces with White Winston (an "out of the money" equity holder and a plaintiff against the Debtor in various legal actions), in the hope of intimidating Empery into negotiating a better deal for the benefit of Ryan Drexler.

41. On December 5, 2022, the Company, White Winston, and Ryan Drexler entered a questionable Settlement Agreement pursuant to which the Debtor agreed to grant White Winston an $8,630,261 debt claim, including a $4,000,000 cash payment, $500,000 of which was to be paid by January 4, 2023, in exchange for White Winston's agreement to drop its claims against Debtor and Drexler.

42. The circumstances surrounding entry into the Settlement Agreement indicate that the Settlement Agreement was designed to (a) convert White Winston's equity position into a secured claim, (b) ultimately give control of the Company to White Winston, (c) provide releases for Ryan Drexler and White Winston, and (d) incentivize White Winston to take the litigation laboring oar against Empery and somehow stop the Foreclosure Sale – all to the detriment of the Company's

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

creditors. Plaintiff is additionally informed and believes that Ryan Drexler did not recuse himself from meetings of the Board discussing the Settlement Agreement even though his own release was at issue.

43. On December 14, 2022, Empery filed a complaint in the Supreme Court of the State of New York County of New York ("**New York State Court**") against the Debtor, White Winston, and Drexler, seeking a temporary restraining order and permanent injunction enjoining the consummation of the troublesome Settlement Agreement, among other things.

44. On December 15, 2022, after holding a hearing, the New York State Court entered a temporary restraining order prohibiting the Company, White Winston, and Drexler from consummating the Settlement Agreement and from taking other action to dispose of any Company assets.

45. On December 14, 2022, the Company filed a complaint against Empery in New York State Court seeking a preliminary and permanent injunction enjoining and restraining Empery from accelerating the Notes and proceeding with a sale of the Company's assets at the Foreclosure Sale on the dubious grounds that there were no defaults under the Notes and, alternatively, that the Foreclosure Sale was commercially unreasonable.

46. On December 15, 2022, after holding a hearing, the New York State Court denied the Company's request for a preliminary injunction, thereby allowing the Foreclosure Sale to proceed.

47. Later that day, and minutes before the Foreclosure Sale was scheduled to commence, the Company finally filed for bankruptcy.

48. As a direct result of the reckless decision of the Board and the Company's senior management to pursue speculative litigation against its senior lender, the Company was forced to cease operations and then file a "free fall" bankruptcy – without any financial support or strategy, thereby destroying any going concern value that remained.

49. As alleged below, the failure of the Board to delay the Debtor's bankruptcy filing until after the stated maturity date of the Notes was a breach of fiduciary duty because potential legal defenses to the Notes became more tenuous at that late date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**E. Lack of Internal Controls and Fraudulent Channel Stuffing**

50. Plaintiff is informed and believes, and on that basis alleges, that the Debtor also failed to exercise proper management and internal controls by permitting its senior management to engage in prohibited "channel stuffing." In a letter dated December 20, 2021, counsel to Janice McCarthy, the Company's former Vice President of Sales, alleged that the Company was engaging in fraudulent and illegal practices in an effort to artificially increase its revenue so it could meet the requirements for the $7 million cash infusion it received in late October. On numerous occasions throughout her tenure, Ms. McCarthy expressed her serious concerns about those business practices.

51. Ms. McCarthy also objected to the Company's plan to outsource storage facilities for several customers (Nutrition Systems, Muscle and Strength, and DNA) to house a new product, Combat Energy, so those customers could place much larger initial orders than they could physically store at their own facilities. When Ms. McCarthy indicated it would be improper for the Company to treat those products as having been sold, Mr. Drexler explicitly instructed her to "do what it takes" to secure the sales. Ms. McCarthy then asked the Company's comptroller, Lon Snook, his opinion. Mr. Snook agreed that, as long as the products remained in the Company's control, it would be improper to treat them as having been sold or to record the corresponding revenue. When Ms. McCarthy conveyed that information to Mr. Drexler, he suggested having the customer sign a contract with the storage facility to enable the Company to pay for the facility and for the customer to place the orders. Ms. McCarthy objected to that plan because it would have constituted fraudulent "channel stuffing." In response, Ms. McCarthy asserts that Mr. Drexler became belligerent toward her and reprimanded her for not following his strategy and taking his direction.

**F. Transfers to Insiders**

52. Notwithstanding its liquidity problems in 2021 and 2022, the Company continued to make substantial payments to insiders (over and above routine salary payments), including without limitation, in the year prior to the Petition Date, more than $6.3 million paid to Ryan Drexler, the Debtor's Chief Executive Officer, board member, and majority shareholder – without any oversight by the Board or the Audit Committee. As alleged below, authorizing and permitting these transfers to

be made, the Board acted in breach of its duties of care and loyalty and left the Company with unreasonably small capital to remain a going concern.

**G. Defendants Assert Claims Against the Debtor**

53. The Defendants assert various claims against the Debtors in the Bankruptcy Case.

54. On April 10, 2023, Defendant Karr filed claim number 40 against the Debtor asserting a general unsecured claim in the amount of $46,875.00 on account of unpaid Board fees.

55. On April 19, 2023, Defendant Drexler filed claim number 65 against the Debtor asserting:[2]

(a) a secured claim of $10,872,081.00 on account of (i) a Secured Revolving Promissory Note dated October 15, 2020, as amended and restated by a Convertible Secured Promissory Note dated August 13, 2021; and (ii) an Amended and Restated Convertible Secured Promissory Note dated August 21, 2020, as amended by a Convertible Secured Promissory Note dated November 29, 2020, as amended by an Amendment to Convertible Secured Promissory Note dated as of August 13, 2021;

(b) a general unsecured claim of $7,045,259.43 on account of an Unsecured Revolving Promissory Note dated March 8, 2022; and

(c) a contingent subrogation and reimbursement general unsecured claim of $5,041,024.92 on account of certain personal guarantees provided by Defendant Drexler in favor of certain trade vendors of the Debtor.

56. On April 19, 2023, Defendant Consac filed claim number 57 against the Debtor asserting a general unsecured claim in the amount of $8,556,294.66 for purported funds advanced by Defendant Drexler to the Debtor that originated from Defendant Consac. Upon information and belief, the amount asserted in claim number 57 is included in claim number 65.

57. Defendant Michael Heller was scheduled by the Debtor as holding a general unsecured claim of $34,375.00.

**FIRST CLAIM FOR RELIEF**

**(Claim Against Ryan Drexler to Avoid and Recover Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550)**

58. The allegations in the preceding paragraphs of this Complaint are hereby realleged and incorporated by reference as though fully set forth herein.

[2] On April 19, 2023, Drexler also filed claim number 84, which appears to be a duplicate of claim number 46.



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

59. As an officer and director of the Debtor, Drexler is an "insider" as that term is defined in 11. U.S.C. § 101(31)(B).

60. As set forth in more detail in **Exhibit A** attached hereto and incorporated by reference, the Debtor made at least 19 transfers of funds to Drexler in the year prior to the Petition Date (the "**Transfers**").

61. Each Transfer was made from the Debtor, and constituted a transfer of an interest in property of the Debtor.

62. Drexler was a creditor of the Debtor at the time of each Transfer by virtue of alleged debt owed by the Debtor.

63. Each Transfer was to or for the benefit of a creditor within the meaning of section 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to Drexler.

64. As is evidenced by **Exhibit A**, each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to Drexler before such Transfer was made, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Drexler prior to being paid by the Debtor.

65. Each Transfer was made while the Debtor was insolvent. Additionally, Plaintiff is entitled to the presumption of insolvency for each Transfer made during the 90 days prior to the Petition Date pursuant to section 547(f) of the Bankruptcy Code.

66. As a result of each Transfer, Drexler received more than he would have received if: (a) the Debtor's chapter 11 case was a case under chapter 7 of the Bankruptcy Code; (b) the Transfers had not been made; and (c) Drexler received distributions on account of such debts under the provisions of the Bankruptcy Code.

67. In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

68. Drexler is the initial, immediate, or mediate transferee of the Transfers.

69. Accordingly, pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant Drexler the Transfers, plus interest thereon to the date of payment and the costs of this action.

66. Plaintiff is entitled to an order and judgment under 11 U.S.C. § 547 that the Transfers are avoided.

**SECOND CLAIM FOR RELIEF**

**(Against Each Board Defendant for Breach of Fiduciary Duty)**

70. The allegations in the preceding paragraphs of this Complaint are hereby realleged and incorporated by reference as though fully set forth herein.

71. At all relevant times, the Board Defendants, in their capacity as members of the Board, owed fiduciary duties of due care, good faith, and loyalty to the Debtor which required them to, among other things, act in good faith and in the best interests of the Debtor, and exercise such care as an ordinarily prudent person in a like position would use under similar circumstances.

72. At all relevant times, the Company reasonably relied on the good faith and competence of the Board Defendants.

73. By their actions, the Board Defendants acted with gross negligence, and breached their fiduciary duties.

74. The decisions to approve Drexler's course of conduct – and ignore the advice of the Company's professionals regarding the commencement of an orderly bankruptcy case – were not grounded in any reasonable business objective, and were the result of a gross abuse of discretion by the Board Defendants. In engaging in this conduct, the Board Defendants did not exercise due care, did not act in good faith, and did not act with an honest or reasonable belief that Drexler's course of conduct was in the best interests of the Debtors. Moreover, in approving the Drexler recommendations, the Board Defendants acted to further Drexler's self-interest rather than the interests of the Company. The Board Defendants thereby breached their duty of loyalty to the Company.

75. As a direct and/or proximate result of the breaches of fiduciary duties committed by the Board Defendants, the Debtor suffered damages in an amount to be determined at trial, but not less than $20 million.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**THIRD CLAIM FOR RELIEF**

**(Objection to Drexler's Claims--Disallowance Under 11 U.S.C. § 502(d) & (j))**

76. Plaintiff repeats and realleges the allegations contained in each preceding paragraph of the Complaint as though set forth fully herein.

77. Defendant Drexler is a transferee of transfers avoidable under section 547 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code. All Board Defendants, including Defendant Drexler, are liable to the Plaintiff for their breaches of fiduciary duty.

78. Defendant Drexler has not paid the amount of the avoidable Transfers, or turned over such property, for which Defendant Drexler is liable under section 550 of the Bankruptcy Code.

79. Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Defendant Drexler and/or his assignee against the Debtor must be disallowed until such time as Defendant Drexler pays to Plaintiff an amount equal to the aggregate amount of the Transfers, plus interest thereon and costs.

80. Pursuant to section 502(j) of the Bankruptcy Code, any and all claims of Defendant Drexler and/or his assignee, against the Debtors previously allowed by the Debtor (if any), must be reconsidered and disallowed until such time as Defendant Drexler pays to Plaintiff an amount equal to the aggregate amount of the Transfers.

81. The Plaintiff reserves all rights to further object to Defendant Drexler's claims, and the claims of any Defendants, on any and all additional grounds.

**FOURTH CLAIM FOR RELIEF**

**(Against All Defendants, for Equitable Subordination of Claims Pursuant to 11 U.S.C. § 510(c))**

82. The allegations in the preceding paragraphs of this Complaint are hereby realleged and incorporated by reference as though fully set forth herein.

83. The conduct of the Defendants, as alleged above, constitutes inequitable conduct.

84. By reason of the Defendants' conduct, the Debtor's arms-length general unsecured creditors with allowed claims were harmed.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

85. Allowing the Defendants to receive payment on any claims filed or scheduled on their behalf in the Bankruptcy Case or otherwise allowed or asserted (the "**Defendant Claims**") prior to the Debtor's general unsecured creditors would be unfair and inequitable.

86. Equitable subordination of the Defendant Claims is consistent with the Bankruptcy Code.

87. Because of the transactions and actions described in the preceding paragraphs of this Complaint, the Defendant Claims should be equitably subordinated to all of the claims of the Debtors' general unsecured creditors pursuant to 11 U.S.C. § 510.

88. Defendant Drexler serves as the sold member, managing member, and Chief Executive Officer of Defendant Consac. Accordingly, the acts of Defendant Drexler are appropriately imputed to Defendant Consac and any claims of Defendant Consac are properly equitably subordinated on account of Defendant Drexler's actions pursuant to 11 U.S.C. § 510.

89. In addition, because the Defendant Claims should be equitably subordinated, all of the consideration paid to or obligations incurred for the benefit of the Defendants on account of such claims, or the value of such consideration, should be recovered or transferred for the benefit of the Debtors' estates and their unsecured creditors.

## V.

## PRAYER FOR RELIEF

Based on the foregoing, the Plaintiff respectfully requests that the Bankruptcy Court enter judgment in favor of the Plaintiff and against the Defendants as follows:

(1) On the First Claim for Relief, a judgment avoiding and recovering the Transfers pursuant to 11 U.S.C. §§ 547(b) and 550(a) and applicable fraudulent transfer law, in an amount not less than $6.3 million, the exact amount to be determined at trial;

(2) On the Second Claim for Relief, a judgment against each Defendant in an amount not less than $20 million, the exact amount to be determined at trial;

(3) On the Third Claim for Relief, a judgment disallowing all claims asserted by Defendant Drexler in the Bankruptcy Case;

(4) On the Fourth Claim for Relief, a judgment equitably subordinating all Defendant

Claims to all general unsecured claims of non-Defendants pursuant to 11 U.S.C. § 510;

(5) On All Claims for Relief, for costs and such other and further relief as the Bankruptcy Court deems just and proper, including, but not limited to, interest at the maximum rate permitted by law and attorneys' fees, to the extent permitted by law.

Dated: December 5, 2024

*_/s/ Matthew C. Zirzow_*
LARSON & ZIRZOW, LLC
Matthew C. Zirzow (NV Bar No. 7222)
Zachariah Larson (NV Bar No. 7787)
850 W. Bonneville Ave.
Las Vegas, NV 89101
Tel: (702) 382-1170
Email: mzirzow@lzlawnv.com
zlarson@lzlawnv.com

-and-

PACHULSKI STANG ZIEHL & JONES LLP
John D. Fiero (admitted pro hac vice)
Jason H. Rosell (admitted pro hac vice)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Tel: (415) 263-7000
E-mail: jfiero@pszjlaw.com
jrosell@pszjlaw.com

Counsel to the Official
Committee of Unsecured Creditors

**EXHIBIT A**

| Transfer Date | Transferor | Transferee | Type | Paid |
|---|---|---|---|---|
| 2/22/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $347,784.66 |
| 2/24/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $308,321.04 |
| 2/28/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $1,145,158.71 |
| 3/1/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $86,066.04 |
| 3/2/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $175,000.00 |
| 3/7/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $290,291.87 |
| 3/7/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $29,299.67 |
| 3/9/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $25,000.00 |
| 3/10/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $98,280.00 |
| 3/15/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $413,940.00 |
| 3/30/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $1,000,000.00 |
| 3/31/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $700,000.00 |
| 4/21/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $53,437.50 |
| 6/10/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $900,000.00 |
| 6/23/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $485,771.20 |
| 7/8/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $50,000.00 |
| 7/18/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $50,000.00 |
| 9/20/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $150,000.00 |
| 9/21/2022 | MusclePharm Corporation | Ryan Drexler | Wire | $50,000.00 |
| | | | | **$6,358,350.69** |